Steven Michael AGE, Appellant,

v.

Janet Louise AGE, Appellee.

Janet Louise Reid (Formerly Age), Cross–Appellant,

v.

Stephen Michael Age; Michael T. Pate, Cross–Appellees.

Nos. 2009–CA–001982–MR, 2009–CA–002173–MR.

Court of Appeals of Kentucky.

Feb. 4, 2011.

Rehearing Denied May 10, 2011.

Louis R. Straub, Louisville, KY, for appellant and cross-appellee.

Paul V. Hibberd, Louisville, KY, for appellee and cross-appellant.

Before CLAYTON, NICKELL, and THOMPSON, Judges.

*OPINION*

CLAYTON, Judge:

This is an appeal and cross-appeal from orders of the Oldham Circuit Court. The Oldham Circuit Court denied the Kentucky Rules of Civil Procedure (CR) 60.02 motion of Steven Michael Age, the appellant and cross-appellee, to set aside the judgment of divorce. Moreover, Janet Louise Age (now Reid), appellee/cross-appellant, contends the court committed reversible error and abused its discretion because its award of maintenance is inadequate. Furthermore, Reid maintains that the court did not make findings and abused its discretion when it ordered her to pay additional attorney fees to her original attorney, Michael T. Pate, also a cross-appellee, and later when it denied reimbursement of these attorney fees by Age to her. After careful review, we affirm.

PROCEDURAL AND FACTUAL BACKGROUND

Age and Reid were married on December 21, 1973. Two children were born during the marriage and they are both now adults. Reid was primarily a homemaker; however, she does hold an associate degree in ornamental horticulture which she received over thirty years ago. Notwithstanding the degree, Reid testified that she never earned more than $7,000 annually. Age is employed by Abbott Laboratories. He earned $153,000 in 2007 and $188,000 in 2008.

Reid filed a petition for dissolution of the marriage on November 30, 2006, after 33 years of marriage. A decree of dissolution was entered on June 3, 2008. After the decree was entered, on June 4, 2008, the parties filed a settlement agreement with the court. The agreement had been executed on April 11, 2008. In the agreement, Reid waived the right to spousal maintenance. The procedural and factual history of this case is complicated, so, in the interest of clarity, it will be explained in a sequential nature, first with regard to the appeal, and then, the cross-appeal.

1. Pertinent facts of the appeal

More than twelve months after the entry of the decree of dissolution on June 18, 2009, Age filed a motion to set aside the decree based on statements by Reid in obtaining a theological annulment of the marriage by the Roman Catholic Church. A hearing was scheduled for October 9, 2009. The motion was denied. Then, on August 10, 2009, Age filed a motion pursuant to CR 60.02 to set aside the judgment on the grounds of mistake, fraud, and new evidence. After hearing the arguments of the parties and considering the record, the motion, and the attendant memoranda, the trial court denied the post-judgment motion in an order entered on September 3, 2009. Age filed a motion to reconsider, which was also denied.

2. Pertinent facts of the cross-appeal

The two issues presented under the cross-appeal are maintenance and attorney fees. Reid maintains that, based on the relative income of the parties, the division of marital property, Reid's employment options and history, and the duration of

the marriage, the court's award of maintenance is inadequate. Second, Reid contends that the court should have made findings both before ordering Reid to pay additional attorney fees to her first attorney, Pate (who is also a cross-appellee), and also when the court denied Reid's reimbursement of these attorney fees by Age. Moreover, she claims that the court's decision was an abuse of discretion.

First, we delineate the factual issues surrounding the award of maintenance. Six months following the filing of the petition, Reid filed a motion for temporary maintenance. On June 19, 2007, an agreed order was entered wherein Age agreed to pay Reid temporary maintenance of $750 per month beginning on July 1, 2007. Under the terms of the settlement agreement, Reid waived maintenance but negotiated for one-half of Age's pension payment. Reid testified that she expected the pension payment to be approximately $2,300 per month. Then, on June 25, 2008, a document entitled "Addendum to Settlement Agreement Dated April 11, 2008," was submitted to the court that addressed the issue of spousal support. The document said "Respondent [Age] agrees to pay to the Petitioner [Reid], on a monthly basis, the amount of $2,300 until such time as the pension payments are received by Petitioner from the Abbott Laboratories pension administrator."

Thereafter, Reid filed several motions to compel both the payment of temporary maintenance, as provided in the June 19, 2007 order, and post-decree maintenance, as established by the addendum to the settlement agreement. Following a hearing on September 12, 2008, the court ordered Age to pay $750 in temporary maintenance for May 2008, and $2,300 in maintenance for June, July, and August 2008. Further, the court ordered the parties to enter into a Qualified Domestic Relations Order (QDRO) immediately so that Reid could begin collecting pension benefits. On September 26, 2008, Reid's attorney at that time, Pate, filed a QDRO, which purported to maximize her entitlement to Age's pension distribution from Abbott Laboratories.

Next, Reid made a motion on December 2, 2008, that based on the previous June 25, 2008 court order, Age pay Reid $2,300 per month until she received pension benefits under the QDRO. At a hearing on the issue, held on January 22, 2009, it was discovered that Reid's receipt of pension benefits would be approximately $953.74 per month, significantly less than the $2,300 per month that she was expecting to receive. Thus, given the new information, the court continued the hearing in order to give the parties time to fully address this new matter. Later, the court entered an order on February 16, 2009, that required Age to pay Reid $1,000, subject to the court's recalculation and a possible refund. It did not indicate whether the $1,000 payment was a one-time or ongoing payment.

The issue of maintenance continued to be disputed by the parties. On April 14, 2009, the court directed Age to pay Reid $750 per month as temporary maintenance, retroactive to March 1, 2009, until further order of the court. Another hearing was held on October 9, 2009, concerning the issues of spousal maintenance, the QDRO, and attorney fees. Reid appeared with new counsel. On the issue of maintenance, she argued that the settlement agreement was unconscionable because the agreement resulted in Reid's receiving insufficient funds to pay for basic needs. The maintenance determination in the settlement agreement arose after an almost 35–year marriage to Age, who consistently earned more than $150,000 per year.

After the hearing, the court entered an order on October 22, 2009, which concluded that the settlement agreement was unconscionable because of the waiver of spousal support and that the current pension benefits are insufficient to meet her minimum financial needs. In its order, the court stated that, effective November 1, 2009, and continuing through October 31, 2013, Age is to pay Reid $2,300 in maintenance per month. The court order continues that beginning in October 2013, Reid will be 59½ years old and able to withdraw pension payments without penalty. At this time, that is, on November 1, 2013, Age will pay Reid $1,000 per month in maintenance until the month in which he retires. Upon his retirement (as long as it is after November 2013), Age's maintenance payments to Reid will cease, and she shall be entitled to collect one-half of Age's pension account as provided in the parties' QDRO.

In addition, Reid appeals the issue of attorney fees. Reid disputes, as cross-appellant, the issue of attorney's fees for her former counsel, Pate. Pate filed an attorney's lien, with an affidavit outlining the fees, against Reid on June 26, 2009, in the amount of $4,646.05. Until then, Reid had paid Pate, between November 2006 and July 2008, $15,718 in attorney fees.

Shortly thereafter, Reid obtained new counsel. After Reid procured new counsel, Pate filed a motion that the $750 maintenance payments made to Reid be sent to him until his attorney's lien was satisfied. Reid countered that an attempt to intercept her potential maintenance was premature. The court reserved the issue for its consideration at the scheduled October 9, 2009 hearing.

After the hearing, in the aforementioned October 22, 2009 order, a prior agreed order was amended so that the accrued, escrowed spousal support was to be paid to Reid immediately. The court then directed that after Reid received the escrowed support payment, she was to pay Pate $1,000 of the attorney lien and, thereafter, upon receipt of the maintenance payment, she was to pay $200 per month until the attorney fee lien was satisfied in full.

Another component of the attorney fees issue involves Reid's motion, entered on October 9, 2009, that Age should reimburse the $1,875 of the attorney fees that she incurred to defend against his motion to set aside the decree because of fraud. (It was after the denial of Age's motion to set aside the divorce decree that the trial court had ordered Reid to pay Pate an additional $4,940.80 in fees.) Reid sought to recover these attorney fees because she characterized Age's post-judgment motion as frivolous and vexatious. But, in an order entered on November 20, 2009, the court denied Reid reimbursement of any attorney fees from Age.

Age appealed the September 3rd and 24th orders of the court by notice of appeal on October 23, 2009. Later, Age amended his notice of appeal and also appealed the October 22, 2009 order. Reid filed a notice of appeal and cross-appeal on November 20, 2009. In her notice of appeal she cited only to the October 22, 2009 order. Further facts relevant to these issues will be developed as necessary.

## ANALYSIS

### I. Issue on Appeal

### 1. Validity of divorce decree

Age argues, pursuant to CR 60.02(d) and (e), that the trial court erred in not vacating the decree of dissolution. Age argues that, because the Roman Catholic Tribunal has deemed the marriage invalid and annulled it, the civil marriage was based on fraud and, further, that he should be free of unjust maintenance payments

and other marital obligations. Moreover, Age claims that under the doctrine of the "essentials of marriage," his marriage was invalid.

 Before addressing Age's CR 60.02 motion, we would be derelict if we did not highlight that a decree of dissolution of marriage generally is not subject to review before an appellate court. *See Clements v. Harris,* 89 S.W.3d 403 (Ky. 2002). Section 115 of the Kentucky Constitution provides that "the General Assembly may prescribe that there shall be no appeal from that portion of a judgment dissolving a marriage." Subsequently, in 1976, the General Assembly enacted Kentucky Revised Statutes (KRS) 22A.020(3), which provides "there shall be no review by appeal or by writ of certiorari from that portion of a final judgment, order or decree of a Circuit Court dissolving a marriage." But while KRS 22A.020(3) does not allow appellate review of a dissolution decree if it is erroneous, appellate review of void judgments is permissible. For example, in *Self v. Self,* 293 Ky. 255, 168 S.W.2d 743 (Ky.1943), the Court held that a judgment granting a divorce may be appealed when that judgment is void. *See also Weintraub v. Murphy,* 240 S.W.2d 594 (Ky.1951). In the situation herein, Age is alleging that the civil marriage was based on fraud and, thus, is asking for the marriage to be declared void.[1] Therefore, notwithstanding KRS 22A.020(3), the decision is subject to appellate review.

Turning to CR 60.02(d) and (e), we note that the court found that neither CR 60.02(d) nor (e) was relevant and that the divorce judgment was valid. Furthermore, it explained that the parties acknowledge that they were lawfully married, and no evidence was proffered to suggest differently. The fact the Catholic Church determined under ecclesiastical law that the marriage was void does not affect the legal effect of a civil marriage. Next, the court noted Age's second argument that, under CR 60.02(b), the divorce decree should be set aside because of newly discovered evidence, which showed the marriage was a fraud. The court explained, however, that because CR 60.02(b) only allows newly discovered evidence to be invoked within a year of the judgment, it is not applicable here. Finally, the court noted that even if, as Age alleges, Reid married him only for personal and financial security that is not a fraud implicating the essentials-of-marriage doctrine. KRS 403.120, which explicates the reasons that a court may declare a marriage invalid, states:

(a) A party lacked capacity to consent to the marriage at the time the marriage was solemnized, either because of mental incapacity or deformity or because of the influence of alcohol, drugs, or other incapacitating substances, or a party was induced to enter into a marriage by force or duress, or by fraud involving the essentials of marriage;

(b) A party lacks the physical capacity to consummate the marriage by sexual intercourse, and the other party did not at the time the marriage was solemnized know of the incapacity;

(c) The marriage is prohibited.

The court ascertained that these categories were inapplicable to the case at hand.

 In 1872, the United States Supreme Court decided *Watson v. Jones,* 80 U.S. 679, 13 Wall. 679, 20 L.Ed. 666

---

1. The concurring opinion expresses concern with whether a determination of a void marriage would affect the legitimacy of children born of such marriage. KRS 391.100, however, states that children born of illegal or void marriages are "considered as if born in lawful wedlock."

(U.S.Ky.1872). This case involved a bitter property dispute between pro-slavery and anti-slavery factions within the Presbyterian Church at the conclusion of the Civil War. The matter was submitted to, and decided by, the highest Presbyterian Church authorities, whose decision was reversed by the Kentucky Court of Appeals. The Kentucky court applied an English precedent known as Lord Eldon's Rule, which provided that church disputes should be submitted to civil courts, and decided in favor of the faction which most closely followed traditional doctrine. *Id.* at 727. The *Watson* court rejected Lord Eldon's Rule and reversed the Kentucky court. The *Watson* court found civil courts to be "incompetent judges of matters of faith, discipline, and doctrine." Thus, *Watson* held that civil courts must decline jurisdiction over such matters. *Id.* at 732. And it went further to hold that

> [Each church] has a body of constitutional and ecclesiastical law of its own, to be found in their written organic laws, their books of discipline, in their collections of precedents, in their usage and customs, which as to each constitute a system of ecclesiastical law and religious faith that tasks the ablest minds to become familiar with. It is not to be supposed that the judges of the civil courts can be as competent in the ecclesiastical law and religious faith of all these bodies as the ablest men in each are in reference to their own.

*Id.* at 729. Hence, the Roman Catholic annulment has no bearing under Kentucky civil law on the marital status of Age and Reid prior to their dissolution.

■■ Our standard of review of a trial court's denial of a CR 60.02 motion is whether the trial court abused its discretion. *Richardson v. Brunner,* 327 S.W.2d 572, 574 (Ky.1959). The test for abuse of discretion is whether the trial court's deci-

sion was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Com. v. English,* 993 S.W.2d 941, 945 (Ky. 1999).

■■ We conclude that the trial court did not abuse its discretion when it denied Age's CR 60.02 motion to vacate the judgment of divorce. The decision as to whether to grant or to deny a motion filed pursuant to the provisions of CR 60.02 lies within the sound discretion of the trial court. *See Schott v. Citizens Fidelity Bank and Trust Co.,* 692 S.W.2d 810 (Ky. App.1985). The rule provides that a court may grant relief from its final judgment or order upon various grounds. Moreover, the law favors the finality of judgments. Therefore, relief may be granted under CR 60.02 only with extreme caution and only under the most unusual and compelling circumstances. *See Bishir v. Bishir,* 698 S.W.2d 823, 826 (Ky.1985).

Thus, we agree with the trial court that the CR 60.02 motion was not timely filed, there was no evidence of civil fraud, and constitutional reasons do not allow an interface between church and state law.

II. Issues on cross-appeal

1. Maintenance

■ Having determined that Age and Reid were lawfully married, obviously Age is required to abide by the terms of the decree and the settlement agreement and, thus, must pay maintenance as ordered. But Reid argues that the trial court made an inadequate award of maintenance based on the relative income of the parties, the division of marital property, Reid's lack of employment history and inability to find employment, plus the duration of the marriage.

■ In determining awards of maintenance, we may not set aside the findings of the family court unless they are

clearly erroneous. CR 52.01. Further, the trial court is afforded a wide range of discretion, which is reviewed under an abuse-of-discretion standard. *See Davis v. Davis,* 777 S.W.2d 230, 233 (Ky.1989); *Platt v. Platt,* 728 S.W.2d 542, 543 (Ky. App.1987).

In her brief, Reid states that she has no dispute with the findings of fact made by the trial court. She, however, believes that the trial court abused its discretion when it set the spousal maintenance at $2,300 per month and reduced this amount of monthly maintenance when Reid's pension benefits commenced.

Reid continues that the trial court erroneously confused the legislative intent of dividing the marital property and awarding spousal maintenance when it ordered that the maintenance should be reduced, dollar for dollar, by the value of the marital property divided and received by Reid on a monthly basis. Despite this assertion, Reid does not establish where or when the trial court actually determined that maintenance should be reduced dollar for dollar by the value of the marital property received by Reid. The trial court carefully considered both the marital property awarded to Reid, and also the fact that her current receipt of pension benefits was only approximately $950 per month. She originally had thought that it would be $2,300 per month. Thus, in effect, the trial court was providing Reid with roughly $1,350 per month in maintenance, and later, $1,000 per month in maintenance until Age retired.

While Reid cites to *Atwood v. Atwood,* 643 S.W.2d 263 (Ky.App.1982), as providing an appropriate mechanism for the determination of maintenance, it is undisputable that trial courts have wide discretion in determining the amount of maintenance and that no particular formula has ever

been held as the method for establishing maintenance.

In fact, KRS 403.200(1)(a) and (b) set out the required findings for an award of maintenance. "[T]here must first be a finding that the spouse seeking maintenance lacks sufficient property, including marital property, to provide for his reasonable needs. Secondly, that spouse must be unable to support himself through appropriate employment according to the standard of living established during the marriage." *Drake v. Drake,* 721 S.W.2d 728, 730 (Ky.App.1986). Then, in addition to the statutorily required specific findings, the trial court is required to consider the statutory factors in KRS 403.200(2). *See Gomez v. Gomez,* 168 S.W.3d 51 (Ky.App. 2005).

During the hearing, the court assiduously asked both parties about the property division and the other factors in KRS 403.200. In its order, it stated that it had considered the factors in KRS 403.200(2) and determined that Reid's current pension benefit was inadequate to meet her minimum financial needs and that the waiver of maintenance in the original settlement agreement was unconscionable. It ordered maintenance so that Reid would receive monthly income in the amount of $2,300. At the time the court made this determination, the amount Reid was to receive in pension benefits would have been roughly $950 per month. With the court's order of maintenance, Reid would now receive $2,300 per month, which was the amount of pension benefits she originally thought she was entitled to receive and on which she negotiated the settlement agreement.

Our review of the record shows no error here by the trial court. Indeed, Reid affirms the trial court's findings of fact but only disputes the interpretation of the facts. In terms of interpretation of the

facts, the statute requires the trial court to make relevant findings of fact and exercise its discretion, using the enumerated factors, to determine whether to award maintenance. *Perrine v. Christine,* 833 S.W.2d 825, 826 (Ky.1992). Besides, a trial court's decision regarding maintenance will not be reversed unless the trial court abused its discretion or based its decision on findings of fact that are clearly erroneous. *Powell v. Powell,* 107 S.W.3d 222, 224 (Ky.2003). Here, interestingly, Reid's concurrence with the trial court's statement of facts lends credibility to the court's assessment of the proper amount of maintenance. We believe the trial court's evaluation of these factors was appropriate and find no abuse of discretion with regard to maintenance. Nor do we find the amount unreasonable or the duration of the maintenance arbitrary.

2. Attorney fees

There are two issues regarding attorney fees. First, Reid maintains that the trial court erred when it ordered her to pay additional attorney fees to Pate, her former attorney and a cross-appellee, in its October 22, 2009 order. And further, she claims that Age should reimburse the attorney fees that resulted from the filing of his post-judgment motions. On both issues Reid contends that the trial court should have made factual findings and that its decision was erroneous and an abuse of discretion.

To begin the analysis, we observe the following procedural deficiency concerning the notice of cross-appeal by Reid. In the notice Reid only noted that she was appealing the October 22, 2009 order. This order makes no reference to Reid's motion for reimbursement of attorney fees. Additionally, a perusal of the September 24, 2009 court order, wherein the court outlined the issues for the October 9, 2009 hearing, shows that it referred only to

spousal maintenance, retirement account QDROs, and Pate's request for attorney fees. The order did not include any mention of the reimbursement of Reid's attorney fees by Age.

A review of the record reveals that on October 7, 2009, Reid filed a motion for reimbursement of $1,875 for attorney fees, which she incurred defending Age's motion to set aside the decree of dissolution. The motion was made two days prior to the hearing and never referenced as an issue for the October 9, 2009 hearing. Consequently, in the order emanating from the hearing, the court does not address the issue of reimbursement of attorney fees. Then, on October 27, 2009, Reid moved for additional findings concerning the reimbursement of attorney fees. Subsequently, the order denying the reimbursement of attorney fees was entered on November 20, 2009, the same day that Reid appealed the October 22, 2009 order. Thus, procedurally, there is no notice regarding an appeal of the issue or the November 20, 2009 order. The appellate rules state:

> A party intending to challenge a post-judgment order listed in this rule, or a judgment altered or amended upon such motion, must file a notice of appeal, or an amended notice of appeal, within the time prescribed by this rule measured by the date of the CR 77.04(2) docket notation regarding service of the order disposing of the last such remaining motion.

CR 73.02(1)(e)(ii). Here, Reid did not file an amended notice of appeal to include the issue of reimbursement of attorney fees.

Again we turn to the civil rules to ascertain the effect of an improper notice of appeal. CR 73.02(2) states that:

> The failure of a party to file timely a notice of appeal, cross-appeal, or motion for discretionary review shall result in a dismissal or denial. Failure to comply

with other rules relating to appeals or motions for discretionary review does not affect the validity of the appeal or motion, but is ground for such action as the appellate court deems appropriate. . . .

The remedies include:

(a) A dismissal of the appeal or denial of the motion for discretionary review,

(b) Striking of pleadings, briefs, record or portions thereof,

(c) Imposition of fines on counsel for failing to comply with these rules of not more than $500, and

(d) Such further remedies as are specified in any applicable Rule.

Therefore, we have wide latitude in responding to such a procedural issue.

 In ascertaining a response to a procedural error, the appellate rules, in particular CR 73.02(2), provide appellate courts with much discretion. In the case before us, because the primary objective of appellate procedure is deciding cases on the merits, the cross-appellee made no objection himself, and no unfair prejudice results from our consideration of the issue, we will consider it, notwithstanding its failure to be properly cited to this Court.

 First, we will address Reid's contention that the trial court abused its discretion by not awarding her the attorney fees that she incurred in defending against Age's motion to set aside the decree of dissolution. Specifically, Reid claims Age's argument (that because Catholic canon law allowed for a religious annulment, the legal marriage was also a nullity) was a frivolous post-decree motion. Hence, she maintains that he should be required to reimburse the attorney fees of $1,875. And further, given the disparity in income between the parties and in light of Kentucky caselaw, the trial court's failure

to award attorney fees was an abuse of discretion. We disagree.

 It is well settled that a trial court has broad discretion in awarding attorney fees to either party in a dissolution proceeding. *Tucker v. Hill*, 763 S.W.2d 144 (Ky.App.1988). Such an award is governed by KRS 403.220, which states in pertinent part:

The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

With regard to Reid's implication that the trial court abused its discretion by not awarding her attorney fees, the most significant portion of the statute is "may order." The trial court has broad discretion in such an award.

 In essence, a trial court's decision regarding KRS 403.220 may only be overturned if an abuse of discretion occurred. *Sexton v. Sexton*, 125 S.W.3d 258, 272 (Ky. 2004). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (quoting *Com. v. English*, 993 S.W.2d 941, 945 (Ky. 1999)). Here, the trial court engaged in a thorough questioning at the multiple hearings on the factors set forth under KRS 403.220. There is no indication that the court's ruling was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.

Reid also maintains that, with regard to the arguments concerning legal fees, the trial court failed to make adequate findings. But we abide by the reasoning in

*McKinney v. McKinney*, 257 S.W.3d 130, 134 (Ky.App.2008), when it cited language from an unpublished opinion of our Court:

It is well-established that a final judgment shall not be set aside because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless the failure is brought to the attention of the trial court by a written motion pursuant to CR 52.02. CR 52.04. In the absence of such a motion, this Court must presume that the evidence presented at trial supports the trial court's conclusions. *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky.1982). But conversely, CR 52.02 does not require a trial court to make additional findings in response to a motion. The rule simply states that the court "may amend its findings or make additional findings" in response to a motion. By its own terms, the rule permits the trial court to determine the sufficiency of its factual findings.

Thus, when a party preserves the issue through a proper motion, the question on appeal is whether the omitted finding involves a matter that is essential to the trial court's judgment. Having thoroughly reviewed the record herein, we observe that the trial court judge exhaustively covered the division of marital assets post-judgment. In doing so, the trial court was well-versed as to the financial resources of the party. Therefore, we do not believe that the court abused its discretion in these determinations. Furthermore, as the trial court oversaw the legal maneuvers of Pate from the inception of this action, it certainly had the ability to discern the reasonableness of the attorney's lien.

To conclude, it is not our province to substitute our judgment for the trial court decisions with regard to maintenance and attorney fee issues absent an abuse of discretion. Having found no abuse of discretion and for the reasons set forth above, we affirm the Oldham Circuit Court.

NICKELL, Judge, concurs.

THOMPSON, Judge, concurs and files separate opinion.

THOMPSON, Judge, concurring:

Respectfully, I concur with the opinion of the majority. However, I must state that Steven Age's appeal from the denial of a CR 60.02 motion to set aside a decree is invalid and should be summarily dismissed. KRS 22A.020(3) states: "Notwithstanding any other provision in this section, there shall be no review by appeal or by writ of certiorari from that portion of a final judgment, order or decree of a Circuit Court dissolving a marriage."

As stated by our Supreme Court in the case of *Clements v. Harris*, 89 S.W.3d 403, 404 (Ky.2002), "[g]enerally, a decree of dissolution of marriage is not subject to review before an appellate court of the Commonwealth." The Supreme Court further stated that "for well over a century, appellate courts of the Commonwealth have consistently held that a judgment granting a dissolution of marriage is not appealable or subject to appellate jurisdiction." *Id.* This decree of dissolution of marriage cannot be set aside by virtue of a CR 60.02 motion as the logic of our statutory and common law is well reasoned.

If a decree of dissolution of **marriage** were subject to appeal or to be set aside at a future date by the stroke of a pen of a judge, it could create illegitimate children who were previously legitimate children of a marriage after the decree. For those reasons, I believe Mr. Age's motion to set aside is invalid on its face and the appeal on this issue is frivolous.