RENDERED:  JUNE 23, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1435-ME

NICOLE RENEE ZOGLMANN                                                  APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.         HONORABLE LAUREN ADAMS OGDEN, JUDGE
ACTION NO. 22-D-503111


GABRIEL JOSEPH WEBER                                                      APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND CETRULO, JUDGES.

CALDWELL, JUDGE:  This is an appeal from a family court's refusal to dismiss a

domestic violence order (DVO) upon the parties' filing a purported Joint

Stipulation of Dismissal.  We affirm.

## FACTS

On September 11, 2022, Nicole Renee Zoglmann (Zoglmann) filed a

petition for an order of protection against Gabriel Joseph Weber (Weber) in

Jefferson Family Court. Zoglmann and Weber were never married to one another. They had previously lived together but had recently ended their relationship. Zoglmann has two minor children with her husband, from whom she was separated.

According to the petition, physical aggression from Weber resulted in bruising to Zoglmann and property damage. The petition specifically stated Weber had fired a gunshot through the range hood in Zoglmann's home. The petition also alleged that Weber had been stalking Zoglmann and sending menacing texts, and he had apparently tried to break into her home. The petition also noted that neighbors had called the police on three occasions before the couple's breakup.

On September 12, 2022, the family court entered an emergency protection order and a protective order summons. On September 20, 2022, following a hearing,[1] the family court entered a DVO, finding that domestic violence had occurred and was likely to occur again. The DVO was to be effective for three years, expiring in September 2025.

The DVO restrained Weber from having any contact or communication with Zoglmann and her children. It also restrained Weber from going within a specified distance of Zoglmann's home or workplace. The DVO

---

[1] No recording of this hearing (which occurred prior to entry of the DVO) was provided in the record on appeal.

further stated Weber was not allowed to possess, purchase, or obtain any firearm during the DVO's duration. The family court also entered a contemporaneous order requiring Weber to surrender his firearm to the sheriff's office.

In addition, the family court entered an order that same day requiring Weber to enroll in and complete domestic violence offender treatment; specifically, the Batterer Intervention Program or BIP. It also entered a Compliance Show Cause Order requiring Weber to appear on November 8th to show proof of compliance with the order requiring domestic violence offender treatment.

Several days after the DVO and associated orders were entered, Zoglmann filed a *pro se* Motion to Amend Prior Order of Protection. Zoglmann stated in her written motion that she would like for Weber to not be required to attend classes, to have the "restraining order" removed and taken off the record, and to allow him to have his concealed carry rights back and to get his gun back. She also stated: "It was all done because of a misunderstanding and miscommunication." The motion was set for a hearing on October 11th.

At the October 11th hearing, the family court heard Zoglmann's testimony about why she wanted to remove the domestic violence offender treatment requirement and the gun restrictions. Zoglmann indicated that her parents had pushed her to pursue the DVO because they wanted to protect her. But

she stated she was not afraid of Weber and felt bad about the restrictions imposed on him. She also stated she felt guilty about some of her own actions and that she had not talked with Weber but had filed the motion to amend of her own volition.

The family court encouraged Zoglmann to take the Choices program classes for domestic violence survivors. But noting its findings in the DVO just a month beforehand, the family court denied Zoglmann's motion. Despite Zoglmann's interjecting to say that allegations in the petition were out of context and that the DVO had unfairly and adversely affected Weber's employment, the court repeated that the motion would not be granted in the interest of protecting Zoglmann's safety.

The family court stated it found Zoglmann's previous testimony prior to entry of the DVO credible. The court also indicated it would consider some amendments to the DVO (such as changing no contact requirements to no unlawful conduct requirements) later if Weber obtained the ordered treatment – which typically took several months to complete. However, the court stated the gun restrictions were required by federal law and could not be changed. The family court noted the upcoming November 8th hearing on treatment compliance.

In early November, an affidavit of a court monitoring official was filed stating that Weber had been ordered to undergo counseling at that office but Weber had failed to keep his appointment for assessment or testing. Also, in early

November prior to the scheduled November 8th hearing, Zoglmann filed a Motion to Dismiss by counsel. This motion to dismiss asserted DVO proceedings are civil matters, subject to the Kentucky Rules of Civil Procedure. The motion noted authority indicating there was no separate rule for voluntary dismissal in DVO proceedings. *See Erwin v. Cruz*, 423 S.W.3d 234, 236 (Ky. App. 2014).

The motion also cited CR[2] 41.01 governing voluntary dismissal of actions and asserted:

> CR 41.01(1) allows a petition to move for dismissal even after service on the adverse party when there is a joint stipulation of dismissal [by those parties] who have appeared in the action. Dismissal under this rule is "automatic, leaving no discretion to the trial court as to whether it should be granted[.]" Whaley v. Whitaker Bank, Inc., 254 S.W.3d 825, 829 (Ky. Ct. App. 2008).
>
> Petitioner understands the special considerations that must be considered by the Court in these types of actions. Petitioner [Zoglmann] respectfully requests dismissal herein.

(Record, pp. 49-50).

A few days after filing her motion to dismiss by counsel, the parties and Zoglmann's counsel signed a notarized document entitled Joint Stipulation of Dismissal, which cited CR 41. The notary's certificate indicates the document was subscribed, sworn, and acknowledged on November 7, 2022. According to the

---

[2] Kentucky Rules of Civil Procedure.

court clerk's records, this Joint Stipulation of Dismissal was filed on November 8th.

The family court conducted a hearing at which both parties testified on November 8th. The family court noted that Zoglmann had filed a motion to dismiss, which it described as similar to an earlier motion which it denied. The family court also noted its prior recommendation that Zoglmann attend Choices and asked what had changed.

Zoglmann's counsel stated the parties had submitted a joint stipulation of dismissal. The family court expressed its concern that Weber had not kept his BIP/domestic violence offender treatment appointment. It noted the parties' request for dismissal. But the court indicated it was not inclined to disturb the DVO since Weber had not complied with its orders.

Zoglmann's counsel stated that Weber had been unable to attend classes due to a knee injury. The court noted classes were offered online, so it did not find the knee injury to be a valid excuse. The court then heard the parties' testimony.

The court asked Weber why he had not started the domestic violence offender treatment process. He replied his knee was in bad shape. The court asked if he was hospitalized and he replied he had gone to a hospital. The court also

asked Weber if he had turned in his firearm. He replied the gun belonged to his wife and stated they no longer lived together.

Zoglmann testified to hearing from friends about the severity of Weber's injury and his difficulties in getting treatment.

The family court stated it would not grant the request to dismiss the DVO since Weber was not getting treatment. The family court declined to hold Weber in contempt for not obeying its orders since he had been ill. But it explained it was not comfortable with lifting any restrictions until he had complied with ordered treatment requirements. It stated it would leave in place the DVO protecting Zoglmann and prohibiting Weber from coming near Zoglmann or her children. It directed Weber to make arrangements to obtain treatment with a reminder that a status hearing was set for a few weeks later.

Zoglmann filed a notice of appeal in early December 2022. And Zoglmann has filed an appellant brief. Weber has not filed a brief with this Court.

Zoglmann argues on appeal that the family court erred in refusing to dismiss the domestic violence action upon the parties' joint stipulation.

## ANALYSIS

**Limitations Posed by the Lack of an Appellee Brief**

RAP[3] 31(H)(3) states:

---

[3] Kentucky Rules of Appellate Procedure.

> If the appellee's brief has not been filed within the time allowed, the court may: (a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

*See also* former CR 76.12(8)(c) (substantially similar to RAP 31(H)(3), which recently took effect on January 1, 2023).

Nonetheless, we have discretion to decline to exercise any of the options listed in RAP 31(H)(3). *See Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007) (declining options in then-effective CR 76.12(8)(c) given presentation of issues of first impression meriting substantive consideration). Even when we do not opt to exercise any of the options listed in our appellate rules, however, our review is somewhat constrained when an appellee does not respond to legal arguments or the appellant's statement of the facts through filing an appellee brief.

We do not specifically elect any of the options provided in our appellate rules for dealing with the lack of an appellee brief here. Instead, we have carefully reviewed the record on appeal as well as the appellant brief and applicable law. Nonetheless, the appellee (Weber) has missed his opportunity to advise us of any disagreements he might have with the appellant's factual statements and legal arguments. And despite the arguments in Zoglmann's brief, we discern no reversible error in the family court's refusal to dismiss the DVO –

-8-

which was entered after an evidentiary hearing and prior to the filing of the parties' purported joint stipulation of dismissal – under the facts and circumstances of this case.

**Unpublished Case Cited in Appellant Brief is Factually Distinguishable**

Zoglmann cites for our consideration our unpublished opinion in *Williamson v. Ballard*, No. 2007-CA-001345-ME, 2008 WL 2941123 (Ky. App. Aug. 1, 2008). Zoglmann admits this unpublished opinion is not binding authority. *See* RAP 41(A). But she urges this Court to reverse the family court's refusal to dismiss the DVO based on the following discussion in *Williamson*:

> The filing of a domestic violence petition is a civil matter. *See* 16 Louise E. Graham & James E. Keller, Kentucky Practice–Domestic Relations Law § 5.13 (2d. ed. West Group 2003 Pocket Part) ("domestic violence proceeding is not a criminal action."). Therefore, CR 41, pertaining to dismissal of actions, applies. Pursuant to CR 41.01(1), Ballard and Williamson could have signed and filed "a stipulation of dismissal" and the matter could have been voluntarily dismissed. Or, under CR 41.01(2), the parties could have asked the court to dismiss the action under any terms it deemed appropriate. Finally, under CR 41.02(1), if Ballard chose not to prosecute the petition, Williamson could have moved for dismissal of the action and it would have been involuntarily dismissed. While CR 41 could have been invoked, it was not.

*Williamson*, 2008 WL 2941123, at *3.

Zoglmann fails to note, however, a key factual distinction between this case and *Williamson*. In *Williamson*, both parties made statements indicating

some desire to voluntarily dismiss the proceedings and/or not to pursue obtaining a DVO **before** the DVO was entered by the family court. *See id*. at \*2-4 (noting that respondent told the court the parties had "resolved their differences," family court failed to ask petitioner if parties reconciled or if she still wished to go forward with allegations, and petitioner initially told family court she was not requesting a no contact order and that she was not seeking any protection from the court in response to questions – all at a hearing before the DVO was entered).

In contrast, in the present case, the parties filed their purported joint stipulation of dismissal several weeks after the family court entered a DVO – a final judgment[4] according to our precedent. *See Bucci*, 218 S.W.3d at 397 (holding that a DVO which adjudicates all the rights of the parties in the proceeding is a final judgment under CR 54.01 and thus a party may seek relief from a DVO under CR 60.02).

**CR 41.01(1) Does Not Apply Post-Judgment**

We cannot disagree with Zoglmann's assertions that DVO proceedings are civil in nature, *see Rankin v. Criswell*, 277 S.W.3d 621, 624 (Ky.

---

[4] Zoglmann failed to appeal from the issuance of the DVO within 30 days of its entry or the family court's denial of her initial motion to amend the DVO. So, she failed to timely appeal from the DVO and the merits of the DVO itself are not before us. *See Erwin*, 423 S.W.3d at 237 ("If Erwin had wished to challenge the issuance of the original DVO entered October 4, 2011, as amended November 1, 2011, he should have done so within 30 days of entry of those orders, by December 1, 2011.").

App. 2008), or generally subject to the Rules of Civil Procedure in the absence of conflicting provisions in statutes or other court rules. And as Zoglmann points out, there appears to be no specific court rule or statutory provision governing voluntary dismissals in DVO proceedings.

So, CR 41.01 is not necessarily inapplicable to domestic violence proceedings. However, CR 41.01(1) did not apply to allow the parties' **post-judgment** request to dismiss the DVO here. Though CR 41.01(1) allows parties to jointly stipulate to dismiss an action filed by a party, it cannot allow parties to jointly dismiss or vacate a court order or judgment without court approval.

CR 41.01(1) states:

> Subject to the provisions of Rule 23.05, of Rule 66, and of any statute, an action, or any claim therein, may be dismissed by the plaintiff without order of court, by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of this state, of the United States or of any state an action based on or including the same claim.

As Zoglmann points out, a joint stipulation of dismissal does not depend upon the adverse party not having filed an answer or motion for summary judgment – in contrast to a unilateral dismissal by a plaintiff under CR 41.01(1).

And regardless of CR 41.01(1)'s statement that it applies subject to governing statutes, there are no specific family court rules, other court rules, or statutes about voluntary dismissal of domestic violence proceedings – despite the existence of specific statutes and family court rules about other matters in domestic violence proceedings. *See*, *e.g.*, KRS[5] 403.715 *et seq.*; FCRPP[6] 10-12. *Compare* KRS 403.745(5) (explicitly providing either party may file a motion to amend an order of protection). But CR 41.01(1) implicitly applies pre-judgment, not post-judgment.

Zoglmann cites *Whaley*, 254 S.W.3d at 829, for the proposition that dismissal under CR 41.01(1) "is automatic, leaving no discretion to the trial court as to whether it should be granted[.]" *Whaley* did not concern a voluntary stipulation of dismissal by multiple parties but rather the plaintiff's unilateral filing of a notice of dismissal. *See id*. at 826. More significantly, the filing of a document aimed at dismissing the action occurred prior to the trial court issuing judgment in *Whaley*. *See id*. at 826-27 (plaintiff filed notice of dismissal after defendant filed a motion to dismiss but prior to the filing of any answer or summary judgment motion; the trial court regarded the motion to dismiss as a summary judgment motion and erroneously dismissed the action with prejudice).

---

[5] Kentucky Revised Statutes.

[6] Family Court Rules of Procedure and Practice.

Though CR 41.01(1) does not explicitly state that it applies only pre-judgment, it implicitly only allows the parties to jointly stipulate to dismissal of the action prior to the entry of judgment.[7] CR 41.01 states the dismissal is without prejudice unless the notice or stipulation of dismissal states otherwise and it explicitly provides that a plaintiff's notice of dismissal operates as an adjudication of the merits if the plaintiff has previously dismissed a court case based on the same claim. Surely such a rule allowing for a party to enter a notice of dismissal operating as an adjudication of the merits under some circumstances does not apply where the court has already adjudicated the merits of a case itself and entered judgment.

Furthermore, attempts to seek relief from a court's judgment are governed by CR 60 – specifically, CR 60.02 in circumstances such as here where a party asks for relief from a **final** judgment based on mistake, inequity in prospective application or other extraordinary reasons.[8] So, despite the parties'

---

[7] Other than Zoglmann's counsel mentioning the parties' having submitted the purported stipulation of dismissal (filed the same day as the hearing), there was no discussion of whether parties could validly stipulate to a dismissal of a DVO at the November 8, 2022 family court hearing based on our review of the recording. Instead, the family court explicitly discussed why it declined to grant the motion to dismiss and/or amend the DVO.

[8] CR 60.02 provides:

> On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds: (a) mistake, inadvertence, surprise or excusable neglect; (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; (c) perjury or falsified evidence;

attempt to invoke CR 41 to try to dismiss the DVO without court approval, the family court instead exercised its discretion to determine if it was appropriate to amend, dismiss, or otherwise disturb the DVO.

**No Reversible Error in Family Court Not Dismissing or Otherwise Disturbing DVO Under Facts Here**

"Our standard of review of a trial court's denial of a CR 60.02 motion is whether the trial court abused its discretion." *Age v. Age*, 340 S.W.3d 88, 94 (Ky. App. 2011) (citing *Richardson v. Brunner*, 327 S.W.2d 572, 574 (Ky. 1959)).

CR 60.02 relief may be available in cases involving DVOs if one can show extraordinary reasons meriting relief from the judgment. *Bucci*, 218 S.W.3d at 397-98. This can be a difficult standard to meet in domestic violence cases given the statutory objectives of protecting victims in the most expeditious manner possible and allowing victims to remain safe and secure from future violence. *Id.* at 398 (citing KRS 403.715(1)). "[W]hether CR 60.02 relief is justified in a case involving a DVO is a consideration not to be taken lightly in light of the clear

---

(d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief. The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this rule does not affect the finality of a judgment or suspend its operation.

Other specific provisions of CR 60 do not appear applicable here such as CR 60.01 (clerical mistakes) or CR 60.03 (independent actions).

-14-

purpose of the General Assembly's domestic violence legislation" and it is appropriate for family courts to take caution and refrain from dissolving DVOs unless it is clearly legally necessary. *Bucci*, 218 S.W.3d at 398.

Even if we leniently construe Zoglmann's motion to dismiss or the parties' purported stipulation of dismissal as a CR 60.02 motion seeking relief from a final judgment, we discern no reversible error in the family court's refusal to disturb the DVO under the facts and circumstances then presented. As the family court had adjudicated the case and issued a DVO – finding that domestic violence had occurred and would likely occur again – which was not timely appealed, it was appropriate for the family court to exercise caution and not dissolve the DVO in the absence of extraordinary reasons or a clear legal necessity to do so. *See Bucci*, 218 S.W.3d at 398.

We discern no abuse of discretion in the family court's refusal to disturb the DVO under the facts and circumstances here. The family court noted its recall of the reasons leading to the recent issuance of the DVO and its concern for protecting Zoglmann's safety.[9] It also expressed concern about lifting restrictions before Weber had even begun court-ordered treatment. Especially as

---

[9] Though not explicitly mentioned by the family court, the safety of Zoglmann's children might also be affected if the DVO were disturbed. Though the proceedings were not formally brought on behalf of the children, the DVO restrained Weber from contacting or coming near Zoglmann's children.

the court indicated it would consider some amendments to the DVO later if Weber completed treatment, its decision was not "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *See Age*, 340 S.W.3d at 94 (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (defining abuse of discretion)).

## CONCLUSION

For the foregoing reasons, we affirm the Jefferson Family Court's judgment.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Justin R. Key
Jeffersonville, Indiana