RENDERED: OCTOBER 6, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1305-MR

MICHAEL VINCENT LUSARDI                      APPELLANT

APPEAL FROM BOONE CIRCUIT COURT
v.               HONORABLE JENNIFER R. DUSING, JUDGE
ACTION NO. 19-CI-00296

SARAH LEE LUSARDI                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, KAREM, AND McNEILL, JUDGES.

CETRULO, JUDGE: Appellant Michael Vincent Lusardi ("Michael") appeals a decree of dissolution of marriage from Appellee Sarah Lee Lusardi ("Sarah"). On appeal, Michael argues that the family court erred in valuing the marital residence and abused its discretion in the division of the marital residence sale proceeds. After review, we affirm.

# I.    BACKGROUND

Michael and Sarah were married in 2007, and during the marriage they built a home in Verona, Kentucky ("marital residence"). In May 2019, Sarah moved out of the marital residence, and Michael remained in the home. In June 2020, the Boone Family Court entered a bifurcated Decree of Dissolution of Marriage that did not address the sale of the marital residence. On September 15, 2020, the family court entered Supplemental Findings of Fact and Conclusions of Law ("2020 Distribution") and a Supplemental Decree of Dissolution.

The 2020 Distribution included a thorough discussion of the marital residence, including reference to two appraisals. Both appraisals included values of comparable homes, and each appraiser viewed the home both inside and outside. Sarah's appraisal – from a local appraiser – valued the home at $525,000; Michael's appraisal – from an out-of-town appraiser (Frankfort) – valued the home at $463,000. The appraisers used different methods when making site adjustments, and the family court heard testimony from the appraisers as to their methods. The 2020 Distribution stated:

> This Court finds [Sarah's appraiser's] testimony to be more credible and objective based on his experience in the Boone County area, and his consistency in valuing adjustments, whereas [Michael's appraiser's] valuations appear to be based more on subjective factors as to what she personally may prefer in a property, as well as inconsistent in the vast fluctuations in adjustments. The Court finds the value of the [marital property] is $525,000.

The 2020 Distribution applied the formula set forth in *Brandenburg v. Brandenburg*, 617 S.W.2d 871, 872 (Ky. App. 1981) and considered the marital and non-marital contributions of the parties, balanced with the appraisal value and mortgage balance at the time of separation. The family court determined that the total equity in the marital residence was $208,164.84; however, only $140,293.47 was marital.

In prioritizing purchasing rights, the family court offered the first right of purchase to Michael because he was currently residing in the marital residence. The family court stated in the 2020 Distribution that

> if [Michael] is able to refinance the home to remove all liability from [Sarah] and pay [Sarah] her share of equity in the amount of $126,812.67 (which indicates her nonmarital claim of $56,665.93 + ½ ($140,293.47)), within ninety (90) days of entry of the Supplemental Decree of Dissolution herein, then [Michael] shall be awarded the marital residence and shall be entitled to sole and exclusive possession of the [marital residence] and all remaining equity. Upon closing of the refinance on the [marital residence] and payment to [Sarah] of her share of equity, [Sarah] shall sign a Quitclaim Deed to [Michael]. [Michael] shall remain solely responsible for all expenses, insurance, taxes and liabilities associated with the marital residence.
>
> If [Michael] chooses not to remain in the home or is unable to refinance the [marital residence] and pay [Sarah] her share of the equity within ninety (90) days of entry of the Supplemental Decree of Dissolution herein, [Sarah] first has the option to buyout [Michael] by refinancing and paying [Michael] his total share of equity in the amount of $81,352.18 (which indicates his nonmarital claim of

-3-

$11,205.44 + ½ ($140,293.47)). If [Sarah] chooses not to buyout [Michael] or is unable to refinance and pay his share of equity, the [marital residence], within thirty (30) days of notice from [Sarah], shall be listed for sale with an agreed upon realtor at a sale price agreed upon by the parties or recommended by the realtor if an agreement cannot be reached. Both parties shall cooperate with the sale of the home and accept any reasonable offers. Both parties shall equally divide any agreed upon expenses or improvements as recommended by the realtor for the prompt sale of the [marital residence].

Shortly thereafter, Michael decided it was not financially feasible for him to retain the marital residence and told Sarah he did not wish to refinance the mortgage. In October 2020, *both* Sarah and Michael hired separate real estate agents and discussed the sale of the marital residence. In December 2020, Sarah informed Michael that she would be exercising her option to refinance the marital residence and would be buying him out as permitted by the Supplemental Decree of Dissolution. In January 2021, Sarah closed on the marital residence and Michael signed a quit claim deed; in February 2021, she took possession; in March 2021, she made improvements, listed the home for sale, and accepted an offer the next day; and in May 2021, she sold the marital residence for $685,000.

In September 2021, the family court entered additional Findings of Fact and Conclusions of Law and Order ("2021 Distribution") to address numerous pending motions; only a few matters discussed in those motions are relevant here. First, the parties could not agree on the verbiage and dates for use in a retirement

account Qualified Domestic Relations Order ("QDRO"). The family court addressed the QDRO in part and reserved in part, ordering the parties to attempt to resolve the remaining QDRO issues through counsel or mediation, if necessary. Second, the family court noted an error made in the 2020 Distribution. The family court admitted that it "neglected, by mistake, to address a credit to [Michael] for the paydown of the mortgage balance since separation in the event of [Sarah] buying out the property." The family court corrected this error and awarded Michael additional funds. Third, Michael requested an even distribution of the actual sale proceeds.

Michael argued the subsequent sale – without an equal distribution of the sale proceeds – was unjust pursuant to Kentucky Rule of Civil Procedure ("CR") 60.02 and resulted in an inequitable division of property as required by Kentucky Revised Statute ("KRS") 403.190. Michael argued,

> [b]ecause [Sarah] did not intend to refinance the [marital residence] to remain in the home, the parties should have, consistent with the [Supplemental Decree of Dissolution], placed the property for sale with an agreed upon realtor at a sale price agreed upon by the parties and divided the proceeds of the sale as set forth within the [Supplemental Decree of Dissolution].
>
> . . .
>
> The Court intended within the Supplemental Decree of Dissolution to allow each party the opportunity to retain the marital home based upon the appraisal value, however, the Court also recognized that if sold, the value of the

home would be known. This Court ordered that if sold, the division of the asset would be performed in a manner to reflect the known value of the home at the time of the sale.

However, the family court did not agree. The 2021 Distribution stated that Sarah had "discussed moving her mother in and sharing the home, but upon getting into the home her mother backed out and she determined it was not emotionally healthy for her to remain in the home so she decided to place it on the market." Further, the family court noted that Michael was given the first opportunity to buy Sarah out of the property but declined; Sarah was then offered the same opportunity and chose to utilize it. The family court went on to state that

> [b]oth parties acknowledge that the Court's [2020 Distribution and the Supplemental Decree of Dissolution] does not indicate the length of time that either party is required to stay in the home upon refinance, but only requires that if [Michael] is unable or does not wish to refinance and buy [Sarah] out of her share that the opportunity be given to [Sarah].
>
> Clearly the value in the [marital residence] increased from the time the appraisals were performed until the house was sold. Both parties were aware or should have been aware in late 2020 that the real estate market was a much stronger market than it had been in 2019 when both of their appraisals had been completed. Both parties of course had the ability to re-appraise the property at any point in their decision-making process in late 2020/early 2021. Additionally, the Court acknowledges that [Sarah] put a great [deal of] time and funds into improvements to the home prior to listing it for sale . . . and it is not known how much those improvements also increased the value of the property.

The Court finds that [Sarah] abided by the terms in the [Supplemental Decree of Dissolution] and that it would not be proper or appropriate to change the terms of the [Supplemental Decree of Dissolution] based on a change in circumstances that occurred in the value of the property after the [Supplemental Decree of Dissolution] was entered.

[Michael] testified that if [Sarah] had taken a loss to the home when she placed it back on the market, he would not be asking to be responsible for half of that debt.

As such, the family court denied Michael's motion as it related to the distribution of the sale proceeds, remaining consistent with the 2020 Distribution.

In October 2021, Michael appealed. However, in March 2022, a panel of this Court dismissed the appeal because the matter had not reached finality. This Court determined that because the issue pertaining to the QDRO was still outstanding, "it does not appear that all the rights of the parties have been adjudicated. As such, the order is interlocutory, and the Court lacks jurisdiction to consider the merits of the appeal."

On October 3, 2022, the family court entered the final QDRO order. On November 1, 2022, Michael again filed a notice of appeal to this Court.

## II. STANDARD OF REVIEW

Michael appeals both the 2020 Distribution and the 2021 Distribution, challenging a finding of fact – the value of marital residence – and conclusions of law – the equitable distribution of marital residence sale proceeds. The 2021

-7-

Distribution addressed open matters in the dissolution litigation, but also acted as a denial of Michael's CR 60.02[1] motion.

Findings of fact are reviewed pursuant to CR 52.01 which provides that "[f]indings of fact, shall not be set aside unless clearly erroneous[.]"  A finding of fact is not clearly erroneous if supported by substantial evidence of a probative value.  *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted).

KRS 403.190 governs the disposition of marital property in a dissolution of marriage.  Family courts have broad discretion in dividing marital property, and this Court may not disturb a family court's ruling on the division of marital property unless it has abused its discretion.  *Smith v. Smith*, 235 S.W.3d 1, 6 (Ky. App. 2006) (citation omitted).  "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."  *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).  Similarly, we review denial of a CR 60.02 motion for an abuse of discretion.  *Age v. Age*, 340 S.W.3d 88, 94 (Ky. App. 2011) (citing *Richardson v. Brunner*, 327 S.W.2d 572, 574 (Ky. 1959)).  "The decision as to

---

[1] CR 60.02 states, in relevant part, "On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds:  . . . (e) the judgment is . . . no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief."

whether to grant or to deny a motion filed pursuant to the provisions of CR 60.02

lies within the sound discretion of the trial court." *Id*. (citation omitted).

> CR 60.02 "is designed to provide relief where the reasons for the relief are of an extraordinary nature." A very substantial showing is required to merit relief under its provisions. Moreover, one of the chief factors guiding the granting of CR 60.02 relief is the moving party's ability to present his claim prior to the entry of the order sought to be set aside.

*Wilder v. Wilder*, 294 S.W.3d 449, 451 (Ky. App. 2009) (quoting *U.S. Bank, NA v.*

*Hasty*, 232 S.W.3d 536, 541-42 (Ky. App. 2007)).

## III.    ANALYSIS

On appeal, Michael argues that the family court erred in its valuation

of the marital residence because it did not reassess the value after the house was

sold. As a result, Michael argues, the family court abused its discretion in the

division of the marital residence sale proceeds. He admits that an equitable

distribution of marital assets need not be equal, but "the division should not be so

disproportionate to give one party a windfall over the other."

Sarah argues the house valuation was not an error and that Michael

cannot meet his burden of showing that the family court's division of the marital

residence was arbitrary, unreasonable, unfair, or unsupported by sound legal principles due to the "extensive, detailed findings" in the 2021 Distribution.[2]

### A. Value of Marital Residence

In the 2020 Distribution, the family court walked through a thorough analysis before reaching the marital residence value, therein discussing each appraiser, his and her regional experience, and their approaches to valuating. The family court noted the approximate timeframe of the appraisals and the number of comparable sales in each analysis, as well as the varying acreage listed in each appraisal and the appraisers' differing methods when making site adjustments. The family court stated that it found Sarah's appraiser's testimony to be "more credible and objective" than Michael's appraiser's testimony and, therefore, accepted Sarah's appraiser's price of $525,000 as the home value.

In his motion challenging that finding, Michael argued that the value of the marital residence should be changed to reflect the sale price of the property. However, in the 2021 Distribution, the family court did not agree that such a change would be proper. The family court acknowledged that the marital

---

[2] Sarah also argues that Michael's appeal is not timely, but we do not agree. As this Court noted in its order dismissing Michael's first appeal, we must have jurisdiction through a final order or appealable order before appellate review is permissible. *See Wilson v. Russell*, 162 S.W.3d 911, 913 (Ky. 2005). CR 54.01 defines a final or appealable judgment as "a final order adjudicating all the rights of all the parties in an action or proceeding, or a judgment made final under Rule 54.02." Finality was not reached here until the family court entered the QDRO in October 2022. This appeal is timely.

-10-

residence value had increased "from the time the appraisals were performed until the house was sold" but that "[b]oth parties were aware or should have been aware in late 2020 that the real estate market was a much stronger market than it had been in 2019 when both of their appraisals had been completed." Both parties *could have* submitted updated appraisals but chose not to do so. Also, the family court noted that Sarah improved the home prior to the sale, and "it is not known how much those improvements also increased the value of the property."

Next, Michael argues that changing the value of the marital residence to reflect the sale price is appropriate because the 2021 Distribution made *another* substantive change to the marital residence assessment. However, the two "changes" he requested are very different requests. The family court corrected an "inadvertent" mistake made in the 2020 Distribution: its failure to address the reduction in the principal balance of the mortgage from date of separation until closing. As a result, the 2021 Distribution corrected this mistake, recalculated the *Brandenburg* formula, and ordered Sarah to pay Michael the difference in his share of the equity. However, the original value of the marital property at $525,000 was *not* a mistake that necessitated change, but rather, it was a finding of fact based on testimony and evidence. Michael cited no precedent that mandated the family court "update" a prior finding of fact that was rooted in substantial evidence. The

-11-

family court's findings were supported by substantial evidence; therefore, its valuation of the marital residence was not clearly erroneous.

## B. Division of Marital Residence Sale Proceeds

Michael argues that the family court's failure to re-value the marital residence after Sarah sold the property resulted in an inequitable division of the marital property. He notes that – after selling the home less than two months after taking possession – Sarah received approximately three times the amount Michael received from the marital residence distribution. He asserts the family court abused its discretion by ordering an unjust, inequitable division of the couple's most valuable asset and erroneously denied his CR 60.02 motion. More specifically, Michael asserts that – pursuant to CR 60.02(e) – the 2021 Distribution is no longer equitable and – pursuant to CR 60.02(f) – the discrepancy in the distribution of the marital residence proceeds justifies extraordinary relief. However, we do not agree.

CR 60.02(e) allows for a court to relieve a party of a judgment if it is "no longer equitable that the judgment should have prospective application[.]" However, this "prospective application" applies to judgments that "involve the supervision of changing conduct or conditions and are thus provisional and tentative." *Raisor v. Burkett*, 214 S.W.3d 895, 907 (Ky. App. 2006) (quoting *Alliant Hospitals, Inc. v. Benham*, 105 S.W.3d 473, 478 (Ky. App. 2003)) (internal

-12-

quotation marks omitted). Here, the family court made final adjudications, only reserving on one issue, the QDRO matter in the 2021 Distribution. With the exception of the QDRO, the family court substantively finalized the distribution of the marital assets and did not make the adjudications conditional, provisional, or tentative. *See Estate of Mills v. Mills*, 473 S.W.3d 94, 98 (Ky. App. 2015) (Noting that a decree of dissolution, like other civil judgments, becomes final ten days after the order is issued.). As such, Michael is not entitled to relief under CR 60.02(e), and the family court did not abuse its discretion in denying this motion.

CR 60.02(f) is a "catchall provision" that applies "only if none of that rule's specific provisions applies." *Alliant Hospitals, Inc.*, 105 S.W.3d at 478 (citing *Commonwealth v. Spaulding*, 991 S.W.2d 651, 655 (Ky. 1999)).

> After determining that CR 60.02(a)-(e) do not apply, courts must consider two more factors: (1) whether the moving party had a fair opportunity to present his claim at the trial on the merits, and (2) whether the granting of CR 60.02(f) relief would be inequitable to other parties.

*Snodgrass v. Snodgrass*, 297 S.W.3d 878, 884 (Ky. App. 2009) (internal quotation marks and citations omitted).

Here too, the family court properly found Michael was not entitled to relief under CR 60.02(f) because he had a fair opportunity to present evidence of an updated value for the marital residence prior to the 2021 Distribution. In his CR 60.02 motion, Michael admitted to hiring a real estate agent in October 2020.

It was not until December 2020 that Sarah informed him that she intended to purchase the marital residence by refinancing the mortgage. The later sale by Sarah, represented a missed opportunity by Michael, not an error in the division of marital assets. The family court stated in the 2021 Distribution that the real estate market had changed since the original appraisals and both parties could have submitted new appraisals for the property. The family court did not abuse its discretion in denying this motion.

Next, Michael argues the failure to more evenly divide the marital residence proceeds resulted in an inequitable division of marital assets pursuant to KRS 403.190. Even though Sarah's sale earned a large profit, that does not prove the 2020 Distribution and 2021 Distribution were inequitable. The 2021 Distribution noted that Michael was given the first opportunity to buy out Sarah but declined to take that option. Moreover, he testified that if Sarah had taken a loss, he would not have shared that deficit. We find no abuse in the family court's distribution. "[A] trial court is not obligated to divide the marital property equally. Rather, a trial court need only divide the marital property 'in just proportions.'" *Smith*, 235 S.W.3d at 6 (citations omitted). The marital residence was divided equitably based on the *known value* at the time of the distribution. As the law favors finality, we cannot accommodate a regret that came to fruition *after* an equitable distribution of marital assets.

-14-

We find no abuse of discretion as to the division of the marital assets within the 2020 Distribution and 2021 Distribution, nor with the denial of Michael's CR 60.02 motion because Michael did not show that the family court's distribution of marital assets was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.

## IV.   CONCLUSION

Therefore, finding no error nor an abuse of discretion, we AFFIRM the Boone Family Court.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Delana S. Sanders
Crescent Springs, Kentucky

BRIEF FOR APPELLEE:

Jennifer B. Landry
Ft. Mitchell, Kentucky